# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS

MICHAEL CHAVEZ, individually and on
behalf of all others similarly situated,

       Plaintiff,

v.

ALL AXIS HOLDINGS, INC. d/b/a
DRAGONFLY HEATING AND COOLING,

       Defendant.

Civil Action No.: 1:25-cv-02001-DAE

## DEFENDANT ALL AXIS HOLDINGS, INC. D/B/A DRAGONFLY HEATING AND COOLING'S OPPOSED MOTION TO DISMISS UNDER F.R.C.P. 12(b)(2) & (b)(5), MEMORANDUM OF POINTS AND AUTHORITIES

**TO MICHAEL CHAVEZ AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** Defendant All Axis Holdings, Inc. d/b/a Dragonfly Heating and Cooling ("Dragonfly") will and hereby does move this Court to Dismiss pursuant to Rule 12, subp. (b)(2) & (b)(5) of the Federal Rules of Civil Procedure.

This Motion is made upon the following grounds:

**Lack of Personal Jurisdiction – Fed. R. Civ. P. 12(b)(2)**

This Court should dismiss the Complaint under Rule 12(b)(2) of the Federal Rules of Civil Procedure because it lacks personal jurisdiction over Dragonfly. Dragonfly is a California resident and lacks the minimum contacts necessary to establish that Dragonfly intentionally availed itself of the benefits and protections of the laws in Texas. Dragonfly is a small, local heating and air conditioning repair company with all of its customers located exclusively in four neighboring counties in Southern California. It does not conduct business in Texas. Plaintiff was formerly a tenant of a California property serviced by Dragonfly and who served as Dragonfly's

NOTICE OF MOTION AND MOTION OF ALL AXIS HOLDINGS, INC. D/B/A
DRAGONFLY HEATING AND COOLING TO DISMISS; MEMORANDUM OF POINTS
AND AUTHORITIES (OPPOSED)

Page | 1

point of contact for service calls to the California property at the landlord's request. At all

relevant times, Plaintiff maintained a cell phone number with a California area code (949) and

Dragonfly was never made aware (nor had the means to become aware) of Plaintiff's move to

Texas. *See, e.g., Pollock v. Protect My Car Admin. Servs.*, No. H-23-1252, 2023 U.S. Dist.

LEXIS 173716, at *5–6 (S.D. Tex. Sep. 28, 2023) ("Although these courts differ as to whether

calls to a Texas area code alone would be sufficient to establish specific jurisdiction in Texas, *it

is evident that calls to a non-Texas area code would not show purposeful availment and would

not be enough for specific jurisdiction in Texas*") (emphasis added).

## Insufficient Service of Process – Fed. R. Civ. P. 12(b)(5)

This Court should dismiss the Complaint under Rule 12(b)(5) of the Federal Rules of

Civil Procedure because service of process was improper. Contrary to the filed Affidavit of

Service, which contains demonstrably false statements, the Complaint was never served on

Sheldon Lane or anyone else at Dragonfly, including its agent for service of process.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and

Authorities, the Declarations of Jeffrey K. Brown, Barry Palmer, and Sheldon Lane filed

concurrently herewith, all of the pleadings, files, and records in this proceeding, all other matters

of which the Court may take judicial notice, and any argument or evidence that may be presented

to or considered by the Court prior to its ruling.

Pursuant to Local Rule CV-7(g), this Motion is made following extensive meet and

confer efforts between counsel for the parties, which first took place by written correspondence

on December 30, 2025, all of which were unsuccessful in resolving the substance of this Motion.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ..................................................................................................7

II.     STATEMENT OF FACTS ...................................................................................9

        A.      Dragonfly and Its Operations..................................................................9

        B.      Dragonfly's Communications With Customers Through RP1.ai ..........10

        C.      Plaintiff Resided At A Property Owned By A Dragonfly Customer...................10

        D.      Dragonfly Honors Plaintiff's Request That He Be Removed From Its
                Contact List..........................................................................................11

        E.      Plaintiff Files This Putative Class Action Under the TCPA.................11

        F.      The Complaint Was Not Served On Dragonfly......................................12

III.    THIS COURT SHOULD DISMISS THE COMPLAINT .................................13

        A.      The Court Lacks Personal Jurisdiction Over Dragonfly.......................13

                1.      Legal Standard ...........................................................................13

                2.      Dragonfly is Not Subject to General Personal Jurisdiction .......15

                3.      Dragonfly is Not Subject to Specific Personal Jurisdiction.......16

                4.      Asserting Jurisdiction Over Dragonfly is Unreasonable ...........20

        B.      Dragonfly Was Not Served with Service of Process ............................22

IV.     CONCLUSION...................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acceleron, LLC v. Egenera, Inc.*,
    634 F. Supp. 2d 758 (E.D. Tex. 2009) ...................................................................................10

*Alpine View Co. Ltd. v. Atlas Copco A.B.*,
    205 F.3d 208 (5th Cir. 2000) ...............................................................................................8

*Asahi Metal Indus. Co. v. Super. Ct.*,
    480 U.S. 102 (1987).............................................................................................................15

*Bearry v. Beech Aircraft Corp.*,
    818 F.2d 370 (5th Cir. 1987) ..............................................................................................15

*Blue Spike, LLC v. Texas Instruments, Inc.*,
    No. 12-cv-00499, 2014 U.S. Dist. LEXIS 50775 (E.D. Tex. Mar. 13, 2014) ........................11

*Cantu v Platinum Marketing Grp. LLC*,
    No. 1:14-CV-71, 2015 U.S. Dist. LEXIS 90824 (S.D. Tex. Jul. 13, 2015)............................13

*Carimi v. Royal Carribean Cruise Line, Inc.*,
    959 F.2d 1344 (5th Cir. 1992) ............................................................................................17

*Carmona v. Leo Ship Mgmt., Inc.*,
    924 F.3d 190 (5th Cir. 2019) ..............................................................................................10

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)........................................................................................................9, 10

*Dakota Indus. v. Dakota Sportswear, Inc.*,
    946 F.2d 1384 (8th Cir. 1991) ............................................................................................16

*Diebold Election Sys., Inc. v. AI Tech., Inc.*,
    562 F. Supp. 2d 866 (E.D. Tex. 2008)...................................................................................8

*Frank v Gold's Gym*,
    No. 18-447(DSD/KMM), 2018 U.S. Dist. LEXIS 108231
    (D. Minn. Jun. 28, 2018)......................................................................................................13

*Garnet Digital, LLC v. Apple, Inc.*,
    893 F. Supp. 2d 814 (E.D. Tex. 2012)..................................................................................11

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011)................................................................................9

*Hanson v. Denckla*,
   357 U.S. 253 (1958)................................................................................14

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945)..............................................................................8, 14

*Johnston v. Multidata Sys. Int'l Corp.*,
   523 F.3d 602 (5th Cir. 2008) ..................................................................10

*Lindgregn v. GDT, LLC*,
   312 F. Supp. 2d 1125 (S.D. Iowa 2004) .................................................16

*Michaels v. Micamp Merchant Servs.*,
   No. 13-191E, 2013 U.S. Dist. LEXIS 159782 (W.D. Pa. Nov. 8, 2013) ..............................12

*Motion Games, LLC v. Nintendo Co.*,
   No. 6:12-cv-878-JDL, 2014 U.S. Dist. LEXIS 147853
   (E.D. Tex. Oct. 16, 2014)........................................................................16

*Murphy Bros. v. Michetti Pipe Stringing, Inc.*,
   526 U.S. 344 (1999)................................................................................17

*My Fabric Designs, Inc. v. F+W Media, Inc.*,
   No. 3:17-CV-2112-L, 2018 U.S. Dist. LEXIS 34240 (N.D. Tex. Mar. 2, 2018) .................8, 9

*Panda Brandywide, Corp. v. Potomac Elec. Power Co.*,
   253 F.3d 865 (5th Cir. 2001) ................................................................8, 11

*Patterson v. Dietze, Inc.*,
   764 F.2d 1145 (5th Cir. 1985) ................................................................14

*Perkins v. Benguet Consol. Min. Co.*,
   342 U.S. 437 (1952)................................................................................9

*Pollock v. Protect My Car Admin. Servs.*,
   No. H-23-1252, 2023 U.S. Dist. LEXIS 173716 (S.D. Tex. Sep. 28, 2023) ......................2, 12

*Reiman v. Garcia*,
   983 F.2d 232 (5th Cir. 1993) ..................................................................17

*Sangha v. Navig8 ShipManagement Private Ltd.*,
   882 F.3d 96 (5th Cir. 2018) .....................................................................8

*Sojka v Loyalty Media LLC*,
    No. 14-cv-770, U.S. Dist. LEXIS 66045 (N.D. Ill. May 20, 2015) .........................................13

*Spurling v. Wright*,
    No. 4:22-CV-01794, 2022 U.S. Dist. LEXIS 248669
    (S.D. Tex. Oct. 20, 2022) ........................................................................................................12

*Stuart v. Spademan*,
    772 F.2d 1185 (5th Cir. 1985) ..................................................................................................8

*Talley v. Tsvetanov*,
    No. 4:23-cv-180-SDJ-KPJ, 2024 U.S. Dist. LEXIS 148559
    (E.D. Tex. July 26, 2024) ........................................................................................................17

*Thomas v. Life Protect 24/7 Inc.*,
    559 F. Supp. 3d 554 (S.D. Tex. 2021) .............................................................................13, 14

*Trioptima Ab v. Quantile Techs.*,
    No. 2:19-cv-00390-JRG, 2020 U.S. Dist. LEXIS 258701
    (E.D. Tex. Nov. 25, 2020) ......................................................................................................14

*Walden v. Fiore*,
    571 U.S. 277 (2014) ................................................................................................................11

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) ............................................................................................................9, 16

**Statutes**

47 U.S.C. § 227 *et seq*. ...............................................................................................................1

Fed. R. Civ. P. 4 .........................................................................................................................17

Fed. R. Civ. P 12 ....................................................................................................................7, 17

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff brings this putative class action against All Axis Holdings, Inc. d/b/a Dragonfly Heating and Cooling ("Dragonfly") asserting two claims under the Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2395 (1991) (codified as amended at 47 U.S.C. § 227) ("TCPA"). This Court should grant this motion and dismiss the Complaint because: (1) it lacks personal jurisdiction over Dragonfly and (2) service of process on Dragonfly was insufficient.

First, the Complaint should be dismissed because the Court has no personal jurisdiction over Dragonfly. Dragonfly is a relatively small heating, ventilation, and air conditioning ("HVAC") repair and installation company headquartered in Riverside, California, that only services properties in four neighboring counties in Southern California: Riverside County, San Bernardino County, parts of Orange County, and occasionally parts of Los Angeles County. Communications by Dragonfly that occur over text messages are only held with customers who own the properties served by Dragonfly in those counties and who have given prior express consent to receive communications from Dragonfly over text.

Dragonfly's business is limited to California. Dragonfly only operates in California, only has customers in California, and only communicates with its customers (all of whom are in California) via text with their consent. Dragonfly received a 949-232-XXXX phone number from Hector Chavez, Plaintiff's family member, who was a California customer of Dragonfly with property in Riverside County (the "Riverside Property"). Dragonfly was provided with the 949-232-XXXX number and was instructed and authorized to contact the 949-232-XXXX number regarding services that Dragonfly was to conduct on the Riverside Property. The (949)-area code

is assigned to certain cities within Orange County, California. Plaintiff alleges that the alleged phone number belongs to him and that, on four instances in 2025, he received text messages from Dragonfly (addressed to the family member who owned the property). However, the Complaint conspicuously omits identifying the area code of the phone number where these texts were allegedly sent, which was 949. Thus, Dragonfly never knowingly or intentionally sent any communications into the Texas forum, nor did it have any way to know that communicating with a (949)-phone number would yield that result.

There are no grounds for establishing specific jurisdiction as Dragonfly has never *purposefully* availed itself of the privilege of conducting activities within Texas because it had no way of knowing that the 949-phone number belonged to an individual who was in Texas at any time. *See Pollock v. Protect My Car Admin. Servs.*, No. H-23-1252, 2023 U.S. Dist. LEXIS 173716, at *5-6 (S.D. Tex. Sep. 28, 2023) ("Although these courts differ as to whether calls to a Texas area code alone would be sufficient to establish specific jurisdiction in Texas, *it is evident that calls to a non-Texas area code would not show purposeful availment and would not be enough for specific jurisdiction in Texas*") (emphasis added). Nor are there grounds for the Court to exercise general jurisdiction as Dragonfly does not maintain substantial contacts within Texas such that Dragonfly could be viewed as "essentially at home" in Texas. Furthermore, the lack of purposeful availment of Texas law coupled with a complete dearth of any activities in Texas would make it unreasonable to force Dragonfly to defend itself in Texas. Accordingly, this Court should dismiss the Complaint as it lacks personal jurisdiction over Dragonfly.

Second, the Complaint should be dismissed because it was never served on Dragonfly. The filed Affidavit of Service contains demonstrably false statements relating to the alleged service on Dragonfly's Chief Executive Officer, Sheldon Lane. However, at the time and date of

the purported service, the Dragonfly office was closed for the funeral of a Dragonfly employee's 15-year-old daughter that was taking place that afternoon in a city that was nearly an hour drive away. Significantly, Lane was in attendance at the funeral and did not return to work that day. Moreover, the affiant's description of Lane bears no actual resemblance to him: wrong height, wrong hair color, wrong age, and wrong weight. It also fails to note that he has a beard. And Lane, for his part, specifically recalls that tragic day and adamantly denies ever being served with process. In light of this evidence, it is clear that the Affidavit of Service is false and process was never served on Dragonfly. Thus, this Court should dismiss the Complaint for insufficient service of process.

For all of the foregoing reasons, Dragonfly respectfully requests that the Court dismiss the Complaint for lack of personal jurisdiction and insufficient service of process.

## II.    <u>STATEMENT OF FACTS</u>

### A.    <u>Dragonfly and Its Operations</u>

Dragonfly is a relatively small heating, ventilation, and air conditioning ("HVAC") repair and installation contractor with only 13 employees. (Palmer Decl., ¶ 2.) Dragonfly only maintains a single office that serves as its headquarters, which is located at 1280 Palmyrita Ave., Suite D, Riverside California 92507. (ECF 1 at ¶ 5; Palmer Decl., ¶ 3.) From this location, Dragonfly only services properties in four neighboring counties in Southern California: Riverside County, San Bernardino County, parts of Orange County, and occasionally parts of Los Angeles County. (Palmer Decl., ¶ 4.)

Throughout December 2025 and up through the present, Dragonfly's agent for service of process has been Dragonfly's Chief Financial Officer, Barry Palmer. (Palmer Dec., ¶ 5, Exhs. 1–

2.) Throughout December 2025, Palmer's service address as Dragonfly's agent for service of process has been 20283 Westpoint Drive, Riverside, California 92507. (*Id.*)

**B.**     **Dragonfly's Communications With Customers Through RP1.ai**

From time to time, it is necessary for Dragonfly to communicate with its customers to remind them about upcoming appointments or to remind them about regular maintenance services that may be due on their equipment. (Palmer Decl., ¶ 6.) Given Dragonfly's limited size, Dragonfly outsources management of text communications with customers to RP1.ai, which integrates Dragonfly's approved customer contact lists into its communications platform to permit automated text messaging to Dragonfly's customers. (Palmer Decl., ¶ 7.) Only those customers who have engaged Dragonfly's services and given prior express consent to receive communications from Dragonfly over text are integrated into the platform. (Palmer Decl., ¶ 8.)

**C.**     **Plaintiff Resided At A Property Owned By A Dragonfly Customer**

Beginning in or around June 2017 and continuing through May 2023, Dragonfly made service calls to a property located at 375 Central Avenue, Riverside, California 92507 (hereinafter the "Riverside Property"). (Palmer Decl., ¶ 9.) The Riverside Property was owned by Hector Chavez, who hired Dragonfly to periodically perform HVAC services on the Riverside Property. (Palmer Decl., ¶ 10.) During the course of Dragonfly's services to the Riverside Property, Hector Chavez notified Dragonfly that his relative, Plaintiff, was a tenant at the Riverside Property, and that a 949-232-XXXX phone number should serve as Dragonfly's point of contact for scheduling and coordinating Dragonfly's HVAC services or repairs at the Riverside Property. (Palmer Decl., ¶ 11.) Notably, the phone number provided by Hector Chavez for Plaintiff had a 949 area code, which is an area code assigned to certain cities in Orange County, California. (Palmer Decl., ¶ 12.) As a result of Hector Chavez's request, Dragonfly

added the (949)-phone number as a point of contact for the Riverside Property and complied

with Hector Chavez's request to contact the (949)-phone number to coordinate service calls to

the Riverside Property. (Palmer Decl., ¶ 13.) At no time prior to 2025 did Plaintiff ever indicate

to Dragonfly that he did not wish to serve as the point of contact for the Riverside Property or

ask to stop receiving text messages from Dragonfly. (Palmer Decl., ¶ 14.)

**D.      Dragonfly Honors Plaintiff's Request That He Be Removed From Its Contact List**

On or about November 21, 2025, Plaintiff sent an email to Dragonfly stating that

beginning October 28, 2025, he began receiving text messages purporting to be from Dragonfly

after previously unsubscribing from Dragonfly's text communications. (Palmer Decl., ¶ 15.)

Attached to the email were screenshots of text messages addressed to "Hector" with reminders of

maintenance due coupled with notices of specials available for HVAC services. (*Id.*) This was

the first communication from Plaintiff that Dragonfly received expressing a desire not to be

contacted at the (949)-phone number. (*Id.*) Based on this communication, Dragonfly immediately

deleted the (949)-phone number information in its system and contacted RP1.ai by telephone to

ensure that the (949)-phone number was removed from their platform so that it would receive no

further texts. (Palmer Decl., ¶ 16.) To Dragonfly's knowledge, the (949)-phone number was not

sent any further text messages from Dragonfly. (Palmer Decl., ¶ 17.)

**E.      Plaintiff Files This Putative Class Action Under the TCPA**

On December 10, 2025, Plaintiff filed a class action Complaint against Dragonfly in the

Western District of Texas asserting two claims under the TCPA based on the text messages

predating the November 21, 2025 email. (*See generally,* Dkt. No. 1.) Notably, the Complaint

does not allege whether Plaintiff ever consented to being contacted by Dragonfly or whether

Dragonfly knew or could have known that he had moved to Texas. (*Id.*)

At no time prior to this action was Dragonfly ever made aware that the recipient with the (949)- phone number was no longer residing at the Riverside Property or had moved to Texas. (Palmer Decl., ¶ 18.) Nor was there any reason for Dragonfly to know that Plaintiff had left California and moved to Texas. (*Id.*) Dragonfly has no customers in Texas and does not knowingly communicate with anyone in Texas or with a Texas area code. (Palmer Decl., ¶ 19.)

**F.**    **The Complaint Was Not Served On Dragonfly**

On December 30, 2025, Dragonfly engaged its counsel regarding a lawsuit that it learned had been filed against it. (Brown Decl., ¶ 2, Palmer Decl., ¶ 20.) Upon reviewing the case docket, it was noted that a complaint had indeed been filed on December 7, 2025, and that an Affidavit of Service had been filed on December 10, 2025. (Brown Decl., ¶ 3.) The Affidavit of Service claimed that service of process had been accomplished through personal delivery of the Summons and Complaint upon Dragonfly's CEO, Sheldon Lane, at Dragonfly's office in Riverside, California, on December 10, 2025, at 4:27 p.m. (Dkt. No. 5.) The Affidavit of Service also included a purported description of "Sheldon Lane." (*Id.*) However, service on Lane at Dragonfly's office on the date and time stated was **impossible**, and Lane in no way matches the description provided.

Significantly, the entire Dragonfly office was closed for the rest of the day starting at 1:00 p.m. on December 10, 2025, so that Dragonfly employees, including Lane, could attend the funeral of the 15-year-old daughter of another Dragonfly employee. (Palmer Decl., ¶ 21, Lane Decl., ¶ 2.) The announcement of the tragic death and the obituary confirm that the funeral was held at 3:00 p.m. on December 10, 2025, in Hemet, California, which is a 40- to 60-minute drive from the Riverside office. (Palmer Decl., ¶¶ 22–23, Exh. 3; Lane Decl., ¶ 3; Brown Decl., ¶¶ 4–5, Exhs. 1–2.) Lane attended the funeral and remained throughout as witnessed by multiple

Dragonfly employees and their families, including Palmer. (Palmer Decl., ¶ 24; Lane Decl., ¶ 2.) After the funeral, Lane and others, including Palmer, lingered in the parking lot of the funeral location until approximately 6 p.m. (Palmer Decl., ¶ 24; Lane Decl., ¶ 3). Notably, Lane did not return to the office after the funeral that day, nor did anyone else as the office was closed. (Palmer Decl., ¶ 25; Lane Decl., ¶ 4.) Nor could it have been possible for anyone at the funeral to return to the Dragonfly office in Riverside by 4:27 p.m. after the funeral, especially during Thursday rush hour traffic. (Palmer Decl., ¶ 26; Lane Decl., ¶ 4; Brown Decl., ¶¶ 4–5, Exhs. 1–2.) In summary, Lane was not present at the office to accept service on December 10, 2025 at 4:27 p.m., nor was anyone else.

Additionally, the affiant's description of the person served does not match Lane in any way. As can be observed from photographs of Lane attached to his declaration, which accurately reflect how he looked on December 10, 2025, it is obvious that the description of Lane in the Affidavit of Service is way off. Lane is 51 years old (not 35-44 years old), is 5'11'' (not 5'6'' to 5'9''), weighs 200 lbs. (not 180 lbs. to 200 lbs.), has white hair (not brown), and has a beard (not mentioned in the description). (Lane Decl., ¶ 5, Exhs. 1–2.) For his part, Lane himself adamantly denies ever being served with the Complaint. (Lane Decl., ¶ 6.) Notably, no service was ever attempted on Palmer even though he was listed as the agent for service of process for Dragonfly. (Palmer Decl., ¶ 27.)

### III.    THIS COURT SHOULD DISMISS THE COMPLAINT

#### A.    The Court Lacks Personal Jurisdiction Over Dragonfly

##### 1.    Legal Standard

Under the Federal Rules of Civil Procedure, a Complaint must be dismissed where the Court lacks personal jurisdiction over the defendant. Fed. R. Civ. P 12(b)(2). When a nonresident

defendant challenges personal jurisdiction, the plaintiff bears the burden of showing

that jurisdiction is appropriate. *Alpine View Co. Ltd. v. Atlas Copco A.B.*, 205 F.3d 208, 215 (5th

Cir. 2000). That analysis may be conducted on the papers, and the court first decides whether the

plaintiff's complaint alleges facts sufficient to make a *prima facie* showing that defendant is

subject to personal jurisdiction. *Id.*; *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d

96, 101 (5th Cir. 2018). The Court may also consider affidavits. *Stuart v. Spademan*, 772 F.2d

1185, 1192 (5th Cir. 1985). The Court is not required to consider conclusory allegations, even if

uncontroverted. *Panda Brandywide, Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th

Cir. 2001).

The exercise of personal jurisdiction must be consistent with both constitutional due

process and the forum state's long-arm statute. Here, the Texas long-arm statute is coextensive

with the limits of due process. *Diebold Election Sys., Inc. v. AI Tech., Inc.*, 562 F. Supp. 2d 866,

872 (E.D. Tex. 2008). Accordingly, "the analysis collapses into a single inquiry into whether the

exercise of personal jurisdiction comports with the guarantees of the Fourteenth Amendment."

*Id.* (citing *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d 309, 311 n.1 (5th Cir. 2007)). Due

process bars a court from exercising personal jurisdiction over a defendant unless such defendant

has "certain minimum contacts with the forum state such that the maintenance of the suit does

not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*,

326 U.S. 310, 316 (1945) (*quoting Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

"The 'minimum contacts' prong is satisfied when a defendant 'purposefully avails itself

of the privilege of conducting activities within the forum state, thus invoking the benefits and

protections of its laws.'" *My Fabric Designs, Inc. v. F+W Media, Inc.*, No. 3:17-CV-2112-L,

2018 U.S. Dist. LEXIS 34240, at *8 (N.D. Tex. Mar. 2, 2018) (*citing Burger King Corp. v.*

*Rudzewics*, 471 U.S. 462, 475 (1985)). "The nonresident defendant's availment must be such that the defendant 'should reasonably anticipate being haled into court' in the forum state." *Id.* at *8–9 (citing *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980)). Such minimum contacts must be substantial enough for a defendant to reasonably anticipate being sued in the forum state. *World-Wide Volkswagen*, 444 U.S. at 297. In other words, a defendant should "not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *My Fabric Designs*, 2018 U.S. Dist. LEXIS 34240, at *9 (citing *Burger King,* 471 U.S. at 475).

Minimum contacts may be shown by contacts that give rise either to "general" jurisdiction or "specific jurisdiction." *My Fabric Designs*, 2018 U.S. Dist. LEXIS 34240, at *9 (*citing Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999)). In this instance, there is neither general nor specific jurisdiction over Dragonfly, and any attempt to exercise jurisdiction over Dragonfly would be contrary to principles of constitutional due process.

### 2.    <u>Dragonfly is Not Subject to General Personal Jurisdiction</u>

To establish general jurisdiction over Dragonfly, Plaintiff must show that Dragonfly's contacts with Texas are so "continuous and systematic" "as to render [Dragonfly] essentially at home in [Texas]." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437, 445–48 (1952); *My Fabric Designs*, 2018 U.S. Dist. LEXIS 34240, at *10.

Plaintiff does not allege—nor could he—that Dragonfly is subject to general jurisdiction in Texas. As a business incorporated and headquartered in California, Dragonfly is presumptively subject to general jurisdiction only in California. The "paradigm all-purpose forums" for general jurisdiction over a corporation are its place of incorporation and principal

place of business. *Daimler AG*, 571 U.S. at 138–39. In particular, "in order to confer general jurisdiction a defendant must have a business presence *in* Texas ... [i]t is not enough that a corporation do business *with* Texas." *Johnston v. Multidata Sys. Int'l Corp.,* 523 F.3d 602, 611–12 (5th Cir. 2008).

Dragonfly is "at home" in California, not in Texas. Plaintiff has not pled any facts demonstrating that Dragonfly has substantial, continuous, and systematic contacts with Texas. Rather, the Complaint admits that Dragonfly is a California company with its principal place of business in California. It has no bank accounts, real property, personal property, telephone listing, or any other assets in Texas and does not lease office space or equipment in Texas. (Palmer Decl. ¶ 3; *see Johnston*, 523 F.3d at 611–12 (no general jurisdiction over corporation that had three percent of total sales to Texas customers and periodically sent employees to Texas to service equipment or attend trade conventions); *Acceleron, LLC v. Egenera, Inc.*, 634 F. Supp. 2d 758, 769 (E.D. Tex. 2009) (finding no general or specific jurisdiction over defendant that "has never made, used, imported, sold, or offered to sell any of the accused products in Texas").

Accordingly, Dragonfly lacks the minimum contacts required to allow this Court to exercise general personal jurisdiction.

### 3. Dragonfly is Not Subject to Specific Personal Jurisdiction

Absent general jurisdiction, Plaintiff must establish specific jurisdiction which exists only if Plaintiff can satisfactorily show that (1) Dragonfly purposefully directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there" and (2) that the plaintiff's cause of action "arises out of or results from the defendant's forum-related contacts." *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) (citing *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)). This inquiry "focuses on 'the

relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (*quoting Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). Because "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State," (*Garnet Digital, LLC v. Apple, Inc.*, 893 F. Supp. 2d 814, 816 (E.D. Tex. 2012)), "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290; *see also Blue Spike, LLC v. Texas Instruments, Inc.,* No. 12-cv-00499, 2014 U.S. Dist. LEXIS 50775, at *101 (E.D. Tex. Mar. 13, 2014) (citing *Revell v. Lidov*, 317 F.3d 467, 473 n.41 (5th Cir. 2002)) ("Suffering harm in Texas is insufficient to establish specific jurisdiction.").

Here, Plaintiff's jurisdictional allegations are minimal, at best. All Plaintiff has alleged is that "Plaintiff Chavez is an individual who resides in Texas" and that "Defendant is a corporation headquartered in Riverside, Riverside County, California." (Dkt. No. 1 ¶¶ 5–6.) Plaintiff further conclusively claims that venue is proper in the Western District of Texas "because a substantial part of the events giving rise to Plaintiff's claims—namely, the illegal telemarketing at issue—were directed into and sent to this District." (*Id.* at ¶ 8.)

These are exactly the type of conclusory allegations the Fifth Circuit has found to be insufficient to establish a prima facie showing of jurisdiction. *See e.g.*, *Panda Brandywine Corp.*, 253 F.3d at 869. In *Panda Brandywine Corp.*, the Court found the plaintiff's allegations "on information and belief" that the defendant knew the plaintiffs "are Texas residents and knew its actions would intentionally cause harm to [plaintiffs] in Texas" was "merely conclusory" and insufficient to establish that the defendant's contacts with Texas were "purposeful." *Id.* at 869. Here, Plaintiff's Complaint falls far shorter than even that in *Panda Brandywine*, alleging only that Plaintiff *currently* resides in Texas, but failing to allege that Plaintiff resided in Texas at the

times relevant in the Complaint, or that Defendant knew that Plaintiff resided in Texas when allegedly interacting with Plaintiff. Plaintiff has accordingly failed to meet its *prima facie* burden of establishing this Court's personal jurisdiction over Dragonfly. Based on the lack of personal jurisdiction allegations in the Complaint alone, the Court should dismiss Dragonfly from the action.

Moreover, allowing Plaintiff leave to amend to allege nonconclusory jurisdictional allegations would be futile. Putting the conclusory allegations aside, even assuming Plaintiff resided in Texas at all relevant times (not alleged), Dragonfly still lacks minimum jurisdictional contact with Texas because Dragonfly could not have known that allegedly sending a text message to a California phone number that previously served as the point of contact for a California property would subject it to jurisdiction of Texas courts. Federal courts in Texas have made clear: "it is evident that calls to a non-Texas area code would not show purposeful availment and would not be enough for specific jurisdiction in Texas." *Pollock*, 2023 U.S. Dist. LEXIS 173716, at *5–6 (S.D. Tex. Sep. 28, 2023); *see also Spurling v. Wright*, No. 4:22-CV-01794, 2022 U.S. Dist. LEXIS 248669, at *9 (S.D. Tex. Oct. 20, 2022) (defendant must know or have reason to know the cell phone holder was located in the state at the time of the call). Other federal courts agree. *See e.g.*, *Michaels v. Micamp Merchant Servs.*, No. 13-191E, 2013 U.S. Dist. LEXIS 159782, at *12–13 (W.D. Pa. Nov. 8, 2013) (finding no specific personal jurisdiction in TCPA case where plaintiff resided in Pennsylvania and had cell phone number with Florida area code because record contained no evidence of conduct aimed at Pennsylvania).

In fact, numerous courts have that a communication alone, even with knowledge of the location of the plaintiff, is insufficient to establish personal jurisdiction over a TCPA defendant. *Cantu v Platinum Marketing Grp. LLC*, No. 1:14-CV-71, 2015 U.S. Dist. LEXIS

90824, at *8–12 (S.D. Tex. Jul. 13, 2015) ("[T]hat a TCPA defendant called a phone number in an area code associated with the plaintiff's alleged state of residence does not, by itself, establish minimum contacts with that state."); *Sojka v Loyalty Media LLC*, No. 14-cv-770, U.S. Dist. LEXIS 66045, *6–7 (N.D. Ill. May 20, 2015) (holding that text messages directed at cell phone numbers in Illinois area code did not demonstrate purposeful availment where defendant did not operate in Illinois or target Illinois customers); *Frank v Gold's Gym*, No. 18-447(DSD/KMM), 2018 U.S. Dist. LEXIS 108231, *6 (D. Minn. Jun. 28, 2018) (eight text messages sent to a Minnesota area-code and received in Minnesota are not contacts such that a defendant "would reasonably anticipate being haled into court in Minnesota"). During meet and confer efforts, Plaintiff's attorney pointed to a single case, *Thomas v. Life Protect 24/7 Inc.*, 559 F. Supp. 3d 554, 568 (S.D. Tex. 2021), breaking from the long line of district court reasoning and applying an expanded analysis of minimum contacts to impose personal jurisdiction over a TCPA defendant who called a Texas plaintiff with a Texas area code. But even in that case, the Court carved out situations exactly like the one present here:

> This isn't to say that a person carrying around a cell phone necessarily carries with it personal jurisdiction over any business that might call that line wherever the phone might be located at the time. For instance, a business calling the (713) area code with the expectation of reaching someone in Houston won't necessarily be subject to personal jurisdiction in Oklahoma City if the person receiving that call happened to travel there with his or her cell phone that day.

*Thomas v. Life Protect 24/7 Inc.*, 559 F. Supp. 3d 554, 568 (S.D. Tex. 2021). Accordingly, Dragonfly's alleged sending of text messages to a California phone number belonging to an allegedly current Texas resident does not satisfy the minimum contacts analysis. This Court

should reject Plaintiff's attempt to hale a small, California company into a foreign Texas court because of "the mere fortuity that the plaintiff happens to be a resident of the forum." *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir. 1985). The purposeful availment of the privilege of conducting activities within the forum state required by the due process clause cannot be inferred from such a "mere fortuity." *Hanson v. Denckla*, 357 U.S. 253, 253 (1958).

Plaintiff has accordingly failed to meet its *prima facie* burden of establishing this Court's personal jurisdiction over Dragonfly, and the Complaint should be dismissed. *See, e.g.*, *Trioptima Ab v. Quantile Techs.*, No. 2:19-cv-00390-JRG, 2020 U.S. Dist. LEXIS 258701, *11–12 (E.D. Tex. Nov. 25, 2020) (no specific jurisdiction over Quantile where it had no customers in Texas, sought no business relationships in Texas, and did not purposefully direct its product to those in Texas).

### 4. Asserting Jurisdiction Over Dragonfly is Unreasonable

Notwithstanding Plaintiff's failure to satisfy the minimum contacts inquiry, this Court should also decline to exercise personal jurisdiction because doing would "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316 (quoting *Milliken*, 311 U.S. at 463. When conducting this inquiry, the court examine five factors: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies. *Asahi Metal Indus. Co. v. Super. Ct.*, 480 U.S. 102, 113–14 (1987).

Under this analysis, this Court's exercise of personal jurisdiction over Dragonfly offends due process. First, the burden on Dragonfly is severe. Dragonfly, a small operation with only

thirteen employees will be forced to expend significant resources to traverse from its principal and only place of business in California to halfway across the country in Texas. Second, despite Plaintiff being an alleged Texas resident, Texas does not hold a significant interest in adjudicating the case. Plaintiff seeks to bring two causes of action, both under federal law, on behalf of a purported nationwide class. Texas has no greater interest in protecting consumers than any other state in protecting their own. And here, where all "common questions of law and fact"—to the extent there are any—will rise and fall on Dragonfly's conduct—which occurred exclusively in California. Accordingly, California, not Texas, has the greater interest in adjudicating this dispute. *See e.g.*, *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 377 (5th Cir. 1987) (noting that defendant's home state had a greater interest in how defendant conducted its general affairs than the chosen forum, where defendant owned no property, opened no facilities, and generally did no business). Third, Plaintiff's interest in a Texas forum is thin, at best. Beyond his own alleged current residence (Dkt. No. 1 ¶ 5), Plaintiff provides no information on whether any alleged acts occurred in Texas, whether any witnesses or evidences exist in Texas, let alone whether any other putative class members are likely to be found in Texas. To the contrary, because Dragonfly does business exclusively in California with California consumers, it is highly unlikely that any putative class members are found in Texas at all. There is no indication that Plaintiff, in his individual or putative class representative capacity, will have a more convenient path to justice other than that he (presumably) chose to relocate to Texas prior to filing suit.

The fourth and fifth factors likewise weigh in favor of dismissal here. Efficient administration of justice is more likely to occur in California, where Dragonfly was incorporated and is headquartered, and where witnesses and evidence is more likely to be located.

*See Motion Games, LLC v. Nintendo Co.*, No. 6:12-cv-878-JDL, 2014 U.S. Dist. LEXIS 147853, at *12–13 (E.D. Tex. Oct. 16, 2014) ("[T]he general rule [is] that a corporation's designees be deposed at or near the corporation's principal place of business.") (citing *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979)). As to the fifth factor, the shared interests in the states to further substantive social policies weighs in favor of dismissal here. States have a legitimate interest in facilitating efficient business operations and protecting consumers. Texas has no greater interest than California in applying federal law, but allowing a plaintiff to forum shop in order to sue out-of-state residents with no minimum contacts to the forum state flies in the face of good social policy.

Put simply, Dragonfly's alleged conduct—send text messages to a phone number with a California area code—simply was not "uniquely or expressly aimed" at Texas, *Lindgregn v. GDT, LLC*, 312 F. Supp. 2d 1125, 1132 (S.D. Iowa 2004), or "performed for the very purpose of having [its] consequence be felt in" Texas, *Dakota Indus. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1391 (8th Cir. 1991) (quoting *Brainerd v. Governors of Univ. of Alta.*, 873 F.2d 1257, 1260 (9th Cir. 1989)), in such a way that Dragonfly should "ha[ve] clear notice that it is subject to suit there," *World-Wide Volkswagen Corp.*, 444 U.S. at 297.

Accordingly, subjecting Dragonfly to personal jurisdiction in Texas courts would be unreasonable and a violation of its due process rights. The Court should dismiss the Complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2).

**B.**     **Dragonfly Was Not Served with Service of Process**

Independently, the Court should also dismiss Plaintiff's Complaint under Rule 12(b)(5) based on insufficient service of process. 'See *Reiman v. Garcia*, 983 F.2d 232 (5th Cir. 1993) (affirming dismissal for insufficient service of process). "In the absence of service of

process (or waiver of service by the defendant)," courts ordinarily may not exercise personal jurisdiction over defendants. *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). The plaintiff has the burden of ensuring that the defendants are properly served with a summons and a copy of the complaint. Fed. R. Civ. P. 4(c)(1); *Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992).

For service to be effective, a plaintiff must comply with the requirements of Federal Rule of Civil Procedure Rule 4. *Talley v. Tsvetanov*, No. 4:23-cv-180-SDJ-KPJ, 2024 U.S. Dist. LEXIS 148559, at *18 (E.D. Tex. July 26, 2024). In considering a motion to dismiss for lack of service of process, a court may properly look beyond the pleadings to determine whether service was sufficient, including at "affidavits and supporting materials." *Id.* (collecting cases).

Here, Plaintiff falsely claims to have served a Summons and Complaint on Dragonfly by personal delivery in California. (See Dkt. No. 5). Plaintiff has filed an Affidavit of Service, in which an individual named Abel Silva alleges to have left the Summons and Complaint with "Sheldon Lane", a "Manager [that] is authorized by appointment or by law to receive service of process….." (*Id.*) This affidavit purports to have effectuated service in accordance with Federal Rule of Civil Procedure 4(h)(1)(B).

Dragonfly respectfully submits that the Affidavit is false; Sheldon Lane was never served. First, Sheldon Lane does not meet the description set forth in the Affidavit of Service. The Affidavit of Services describes the person served as follows: "White Male, est. age 35–44, glasses: N, Brown hair, 180 lbs to 200 lbs, 5'6" to 5'9"." (ECF 5.) However, as can be observed from photographs of Lane attached to his declaration, which accurately reflect how he looked on December 10, 2025, it is apparent that whatever person the Affidavit of Service is describing is not Lane. Lane is 51 years old (not 35-44 years old), is 5'11'' (not 5'6'' to 5'9''), weighs 200

lbs. (not 180 lbs. to 200 lbs.), has white hair (not brown), and has a beard (not mentioned in the description). (Lane Decl., ¶ 5, Exhs. 1–2.) Assuming anyone was served, it certainly does not appear to have been Lane. This is supported by Lane himself, who adamantly denies ever being served with the complaint. (Lane Decl., ¶ 6.)

Moreover, service on Lane, or any other employee of Dragonfly, would have been impossible on December 10, 2025, at 4:27 p.m. at the 1280 Palmyrita Avenue address. Significantly, the entire Dragonfly office was closed for the rest of the day starting at 1 p.m. on December 10, 2025, so that Dragonfly employees, including Lane, could attend the funeral of the 15-year-old daughter of another Dragonfly employee. (Palmer Decl., ¶ 21, Lane Decl., ¶ 2.) The announcement of the tragic death and the obituary confirm that the funeral was held at 3 p.m. on December 10, 2025, in Hemet, California, which is a 40- to 60-minute drive from the Riverside office. (Palmer Decl., ¶¶ 22–23; Lane Decl., ¶ 3, Brown Decl., ¶¶ 4–5, Exhs. 1–2.) Lane attended the funeral and remained throughout as witnessed by multiple Dragonfly employees and their families, including Palmer. (Palmer Decl., ¶ 24; Lane Decl., ¶ 2.) After the funeral, Lane and others, including Palmer, lingered in the parking lot of the funeral location until approximately 6 p.m. (Palmer Decl., ¶ 24; Lane Decl., ¶ 3.) Lane did not return to the office after the funeral that day, nor did anyone else. (Palmer Decl., ¶ 25; Lane Decl., ¶ 4.) Nor could it have been possible for anyone at the funeral to return to the Dragonfly office in Riverside by 4:27 p.m. after the funeral, especially during Thursday rush hour traffic. (Palmer Decl., ¶ 26; Lane Decl., ¶ 4; Brown Decl., ¶¶ 4–5, Exhs. 1–2.)

In summary, Lane was not present at the office to accept service on December 10, 2025 at 4:27 p.m., nor was anyone else. Notably, no service was ever attempted on Palmer even though he was listed as the agent for service of process for Dragonfly. (Palmer Decl., ¶ 27.)

NOTICE OF MOTION AND MOTION OF ALL AXIS HOLDINGS, INC. D/B/A
DRAGONFLY HEATING AND COOLING TO DISMISS; MEMORANDUM OF POINTS
AND AUTHORITIES (OPPOSED)

Page | 24

The evidence is sufficient to overcome Plaintiff's demonstrably inaccurate Affidavit of Service. The Court should dismiss the Complaint accordingly because proper service was never effectuated.

Accordingly, Plaintiff's Complaint should be dismissed because this Court lacks personal jurisdiction over Dragonfly, and Dragonfly was never served with due process.

### IV.    <u>CONCLUSION</u>

For the foregoing reasons, Dragonfly respectfully requests this Court grant its Motion and dismiss Plaintiff's Complaint.


DATED: January 14, 2026


*/s/ Jeffrey K. Brown*
Jeffrey K. Brown, CA Bar No. 162957
Alejandro G. Ruiz *(Pro Hac Vice forthcoming)*
Camilla J. Dudley (*Pro Hac Vice forthcoming*)
PAYNE & FEARS LLP
Attorneys at Law
4 Park Plaza, Suite 1100
Irvine, California 92614
Telephone: (949) 851-1100
Facsimile: (949) 851-1212
jkb@paynefears.com
agr@paynefears.com

Attorneys for Defendant All Axis Holdings, Inc.
d/b/a Dragonfly Heating and Cooling

4934-1979-2773.6

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of January, 2026, a true and correct copy of

**DEFENDANT ALL AXIS HOLDINGS, INC. D/B/A DRAGONFLY HEATING AND**

**COOLING'S OPPOSED MOTION TO DISMISS UNDER F.R.C.P. 12(b)(2) & (b)(5),**

**MEMORANDUM OF POINTS AND AUTHORITIES** was served via electronic service and

U.S. Mail on the following in accordance with Fed. R. Civ. P. 5(b)(2)(E):

Andrew Roman Perrong, Esq.                *Attorneys for Plaintiff Michael Chavez ana*
Perrong Law LLC                                  *the Proposed Class*
2657 Mount Carmel Avenue
Glenside, PA 19038
Email: a@perronglaw.com

Anthony Paronich, Esq.                        *Attorneys for Plaintiff Michael Chavez ana*
Paronich Law, P.C.                                *the Proposed Class*
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Email: anthony@paronichlaw.com


By    */s/ Paige Fruth*
           Paige Fruth, an Employee of
           PAYNE & FEARS LLP