## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| MICHAEL CHAVEZ, individually and on behalf of all others similarly situated, | Case No. |
| | **1:25-CV-2001** |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| ALL AXIS HOLDINGS, INC. d/b/a DRAGONFLY HEATING AND COOLING | |
| Defendant. | |

## **RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

## INTRODUCTION

Defendant All Axis Holdings, Inc's. d/b/a Dragonfly Heating and Cooling (Dragonfly or Defendant)'s motion to dismiss must be denied because the Plaintiff has pled sufficient facts to demonstrate the exercise of specific personal jurisdiction in Texas against Dragonfly. The claims at issue in this litigation arise out of conduct directed at a Texas resident who, at all times relevant, resided in Texas. Defendant's alternative attempt to toss this case on alleged insufficient service of process has now been mooted, and the Court should not dismiss on that basis, either. Defendant's motion must be unquestionably denied.

## LEGAL STANDARD

"The plaintiff has the burden of establishing that the court has personal jurisdiction." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 211 (5th Cir. 2016) (cleaned up). To carry that burden, a plaintiff need only "make a prima facie showing." *Id.* (cleaned up). This is a "liberal standard." *Van Rooyen v. Greystone Home Builders, LLC*, 295 F. Supp. 3d 735, 742 (N.D. Tex. 2018). In demonstrating the presence of personal jurisdiction, the Plaintiff is not confined to the allegations in the Complaint, but may supplement those by affidavits, depositions, exhibits, or other combinations thereof. *Command-Aire Corp. v. Ontario Mech. Sales & Serv., Inc.*, 963 F.2d 90, 95 (5th Cir. 1992). The Court "must accept the plaintiff's uncontroverted allegations, and resolve in his favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Id.*

Under Rule 12(b)(5), a court may dismiss a complaint for insufficient service of process. "A motion to dismiss pursuant to Rule 12(b)(5) turns on the legal sufficiency of the service of process." *Quinn v. Miller*, 470 F. App'x 321, 323 (5th Cir. 2012) (per curiam). "[O]nce the validity of service of process has been contested, the plaintiff bears the burden of establishing its

validity." *Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992).

"The general rule is that a signed return of service constitutes prima facie evidence of valid

service, which can be overcome only by strong and convincing evidence." *People's United*

*Equip. Fin. Corp. v. Hartmann*, 447 F. App'x 522, 524 (5th Cir. 2011) (per curiam) (cleaned up).

Upon a showing that any deficiency in service has been corrected, such motion is appropriately

denied as moot. *Ruiz v. Mackie Wolfe Zientz & Mann, P.C.*, No. SA-12-CA-744-FB, 2012 WL

12888783, at *5 (W.D. Tex. Sept. 24, 2012).

## ARGUMENT

A. <u>Defendant is subject to specific personal jurisdiction in Texas because it called a Texas resident in Texas.</u>

Though Defendant makes much of the fact that it operates and does business in California

and did not call a Texas area code, Defendant ignores a long line of TCPA-specific Texas case

law holding that companies engaging in illegal telemarketing are generally subject to personal

jurisdiction in the forum where their calls were received. In this regard, the Southern District's

decision in *Thomas v. Life Protect 24/7 Inc.* is particularly illustrative.

There exist two types of personal jurisdiction: general and specific. Specific personal

jurisdiction exists when the defendant has "purposefully directed his activities at residents of the

forum and the litigation results from alleged injuries that arise out of or related to those

activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). General personal

jurisdiction exists when the defendant's contacts with the forum, whether or not related to the

litigation, are "continuous and systematic." *Helicopteros Nacionales de Colombia v. Hall*, 466

U.S. 408, 416 (1984). As a preliminary matter, the Plaintiff does not contest that this court lacks

*general* jurisdiction over Defendant. But the Defendant is unquestionably subject to *specific*

- 3 -

personal jurisdiction here, as bolstered by the Plaintiff's affidavit in support of jurisdiction and the case law herein, including *Thomas*.

The plaintiff must establish two things to establish *specific* jurisdiction over an out-of-state defendant. *First*, the Plaintiff must demonstrate that minimum contacts exist between the defendant and the state; *second*, the Plaintiff must demonstrate that the harm alleged arises out of or relates to the defendant's forum-related contacts. *Bulkley & Assocs., L.L.C. v. Dep't of Indus. Rels., Div. of Occupational Safety & Health of the State of Cal.*, 1 F.4th 346, 351 (5th Cir. 2021). If a plaintiff carries its burden as to these first two prongs of specific jurisdiction, "the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). *Thomas* shows why both prongs are unquestionably met here.

In *Thomas*, the Defendant, a Virginia-based seller of alarm systems, attempted to dismiss an action against it on a nearly identical basis as Defendant here, that it was not subject to personal jurisdiction in Texas. 559 F. Supp. 3d 554, 559 (S.D. Tex. 2021). The *Thomas* court started by applying the familiar 12(b)(2) standard under both Fifth Circuit and Texas law. *Id.* at 561. The Court also reiterated the five-prong test the Fifth Circuit articulated for the exercise of specific personal jurisdiction in *Sangha v. Navig8 Ship Management Private Ltd.*, 882 F.3d 96, 102 (5th Cir. 2018). In the TCPA context in the Fifth Circuit, courts generally agree that a TCPA claim is akin to an intentional tort committed by telephone for jurisdictional purposes, so the Court applies the standard that governs telephone intentional tort claims. *Salaiz v. Oscar Mgmt. Corp.*, No. EP-22-CV-00114-DCG, 2025 WL 1794447, at *3 (W.D. Tex. June 25, 2025).

Like in *Thomas*, the Plaintiff here doesn't contest that this Court lacks *general* jurisdiction over Dragonfly. The question, then, is whether the Court enjoys *specific* jurisdiction

- 4 -

over Dragonfly. And the answer to that question, *Thomas* counsels, is yes. *Id.* at 566-568. In *Thomas*, the Defendant attempted to dismiss by pointing out, as Defendant does here, that the only connection between the calls and the state of Texas is that the call recipient was located there. *Id* at 567. In so doing, the *Thomas* court rejected both arguments that Dragonfly raises here: that it has no business operations in Texas and didn't even know it was calling someone in Texas. But neither of those arguments are availing.

Start with the proposition that Dragonfly maintains no business operations nor property in Texas. That's true, but so what? *Thomas* says that doesn't matter. "A nonresident can establish contact with the forum by taking purposeful and affirmative action, the effect of which is to cause business activity (foreseeable by the defendant) in the forum state." *Id.* at 566 (citing *Central Freight Lines Inc. v. APA Transport Corp*, 322 F.3d 376, 382 n 6 (5th Cir. 2003)). And, the purposeful and affirmative action here is sending calls that landed in Texas. "Even an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct." *Id.* (citing *Guidry v. United States Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999)).

Next, consider the Plaintiff's location. Plaintiff's complaint makes clear, as the complaint in *Thomas* made clear, that the Plaintiff is an "individual who resides in Texas" and that the subject calls were "sent to this District." *Compare* Compl. ¶ 6, 8 *with Thomas*, 559 F. Supp. 3d at 566. "This is sufficient to allege that [Defendant] made robocalls to [Plaintiff] in the forum." *Id.* As such, by committing an intentional tort that landed in Texas by virtue of their use of the interstate telephone communications system, Dragonfly has purposefully availed itself of the jurisdiction of this Court.

- 5 -

In *Thomas*, just as here, the defendant did not call a Texas area code. Instead, it called a

different state's area code and reached an individual located in Texas. *Id.* But the *Thomas* court,

559 F. Supp. 3d at 567-568 (cleaned up), went on to explain why this fact did not matter, either:

> But according to Life Protect, the calls still shouldn't count as purposeful availment *of Texas* because it didn't know that any *particular* call made to any *particular* area code would be received in the *particular* State of Texas. This argument derives from the requirement noted above that the effects at issue must have been *intended* or *highly likely to follow* from the nonresident defendant's conduct.
>
> Some courts have agreed with such argument, holding that a phone call can't establish minimum contacts when the defendant doesn't *specifically* know that its conduct will reach the particular forum. . . . This Court disagrees. Congress designed the TCPA to protect consumers wherever they might receive and be harassed by robocalls. And requiring such putative hyper-specific knowledge by the offending, robocalling defendant would severely curtail the statutory protection granted by Congress to individuals against such robocallers.
>
> Under substantive law, a tortfeasor can quite plainly be liable for intentional conduct, even where the precise harm or exact victim might not be known in advance. For example, firing a gun into a crowd will still land you in a lot of trouble, even if you aren't aiming at anyone in particular. See generally *Transportation Insurance Co. v. Moriel*, 879 S.W.2d 10, 23 n. 15 (Tex. 1994) (superseded by statute on other grounds) (observing that person shooting into crowd and not hitting anyone but causing property damage is still liable for gross negligence). . . . The same is true when creating an attractive nuisance on your property. Restatement (Second) of Torts § 339 (1965); see generally *Texas Utilities Electric Co. v. Timmons*, 947 S.W.2d 191, 193–94 (Tex. 1997) (reaffirming adoption of § 339 and collecting cases).
>
> The inquiry into jurisdictional contacts doesn't proceed on the exact same basis. Even so, the Fifth Circuit recognizes an analogous distinction:
>
>> *When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment.* The defendant is purposefully availing himself of "the privilege of causing a consequence" in Texas. Cf *Serras v. First Tennessee Bank National Association*, 875 F.2d 1212 (6th Cir. 1989). It is of no use to say that the plaintiff "fortuitously" resided in Texas. See *Holt Oil*, 801 F.2d at 778. If this argument were valid in the tort context, the defendant could mail a bomb to a person in Texas but claim Texas had no jurisdiction because it was fortuitous that the victim's zip code was in Texas. It may have been fortuitous, but the tortious nature of the directed activity constitutes purposeful availment.

- 6 -

*Wien Air Alaska*, 195 F.3d at 213 (emphasis added, citation form edited). And the Fifth Circuit notably holds that a defendant that initiates a telephone call and allegedly commits an intentional tort purposefully avails itself of the state where the effect of the tort fell and can therefore be subject to personal jurisdiction there. *Trois v. Apple Tree Auction Center, Inc.*, 882 F.3d 485, 490–91 (5th Cir. 2018) (collecting cases).

*It thus doesn't matter whether Life Protect knew in advance that Thomas resided in Texas because certain types of intentional conduct must, by their very nature, manifest their effects beyond the borders of the state in which the defendant acts*. Here, Life Protect (allegedly) engaged in the very business practice specifically condemned by Congress—calling numbers robotically at random. And by doing so, Life Protect knew full well that it was using cellular and wire lines intended to go far beyond its home state. In this instance, *wherever* it reaches a consumer with a robocall, Life Protect has purposefully availed itself of that state's laws. That it didn't know precisely where its intentional, externally directed contact would land with each dial of the phone is no reason to deprive a federal court of personal jurisdiction where its calls did, in fact, land.

This isn't to say that a person carrying around a cell phone necessarily carries with it personal jurisdiction over any business that might call that line wherever the phone might be located at the time. For instance, a business calling the (713) area code with the expectation of reaching someone in Houston won't necessarily be subject to personal jurisdiction in Oklahoma City if the person receiving the call happened to travel there with his or her cell phone that day.

But minimum contacts sufficient to establish personal jurisdiction exist here. Where a business is alleged to engage in intentional practices assuredly designed to manifest results across the country in contravention of a federal statute, the act of reaching out in that prohibited manner is purposeful availment of "the privilege of causing a consequence" in whatever state that call reaches. *Wien Air Alaska*, 195 F.3d at 213.

The *Thomas* Court went on to explain why Dragonfly's argument, that it had "no way of knowing that the 949-phone number belonged to an individual who was in Texas at any time," MTD at 8, was "nonsense," reasoning that because the plaintiff placed her number on the do not call registry but was nevertheless contacted on a "repetitive and continuous basis for solicitation purposes," the nuisance and forum-related contacts occurred in Texas. *Id.* at 569. This is even more the case here, where Plaintiff asked for the calls to stop, received confirmation they would stop, but then had them continue. Indeed, this *very court* has adopted precisely the same reasoning on multiple occasions. *E.g.*, *Salaiz*, 2025 WL 1794447, at *3, *5 (granting

- 7 -

jurisdictional discovery when defendant disputed it made the calls as an initial matter and declining to "impose a hyper-specific knowledge requirement—that the Caller must have known the call would be received in Texas"); *Cunningham v. Watts Guerra, LLP*, No. SA-22-CV-363-OLG (HJB), 2024 WL 3100773, at *9 (W.D. Tex. May 23, 2024) (holding personal jurisdiction when plaintiff was solicited in Texas to a North Carolina area code number).

Defendant's contrary authority and legal analysis are unavailing. As the *Cunningham* court observed, the only way Defendant is able to carry its burden of showing that jurisdiction is unreasonable is if imposition of jurisdiction would "would offend traditional notions of fair play and substantial justice" 2024 WL 3100773, at *9. But even a cursory analysis of the Fifth Circuit's *Sangha* test shows that the exercise of jurisdiction here is fair and reasonable, the second prong of the personal jurisdiction analysis. In determining whether the exercise of jurisdiction is fair and reasonable, the court must balance: (1) the burden on the nonresident defendant of having to defend itself in the forum, (2) the interests of the forum state in the case, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in the most efficient resolution of controversies, and (5) the shared interests of the states in furthering fundamental social policies. *Sangha*, 882 F.3d at 102.

Here, the only possible factor weighing in favor of a finding of no jurisdiction on fair play and substantial justice grounds is Dragonfly's burden, and even this is minimal, Dragonfly not having met its "substantial" burden of demonstrating that the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. Indeed, the burden of having Dragonfly defend itself in Texas, after having called an individual in Texas, is minimal. The transnational aspect of federal class action litigation is just as burdensome in Texas as it will be in California. Conversely, the other *Sangha* factors weigh in favor of a finding that the exercise

- 8 -

of jurisdiction would not impact fair play or substantial justice, as explained in Plaintiff's opposition to the motion to transfer. Texas has a substantial interest in securing convenient and effective relief for its residents who receive illegal telemarketing calls within the state's borders. Next, it would be most efficient to resolve this controversy in Texas, where the Plaintiff resides. And finally, as *Thomas* makes clear, states share an interest of ensuring relief for intentional torts which are committed against residents within their borders. Indeed, as Plaintiff's declaration makes clear, Plaintiff has significant ties to Texas and it would be incredibly burdensome for Plaintiff to have to prosecute this case in California, where he does not reside.

Nor are the cases cited by Dragonfly at all persuasive because they do not address the propriety of a finding of jurisdiction where, as here, the defendant commits an intentional tort *through the telephone*, as opposed to mere *written* intentional torts, which simply affect in-state conduct, as opposed to being directed into the forum state. *See Trois*, 882 F.3d at 490–91 (collecting cases). That renders *Revell*, which dealt with a *written* intentional tort, and *Blue Spike*, which didn't deal with intentional torts at all, distinguishable.

Nor is *Panda Brandywine* availing, for nearly identical reasons. As contrasted with the Plaintiff's cause of action specific authority, *Panda Brandywine* dealt with purposeful availment not even in the context of an intentional tort but instead a mere financing agreement did not constitute requisite minimum contacts with Texas because "Appellants' tortious interference claims involved financing agreements not governed by Texas law, not to be performed in Texas, and unrelated to Texas other than the fortuity that Appellants reside in Texas." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001). By contrast, here, Dragonfly sent its illegal calls to an individual who resided in Texas, including after he had asked the messages to stop, an action which *multiple* Texas courts *have* held to be sufficient to

demonstrate purposeful availment. *See Thomas*, *Salaiz*, *Cunningham*, *supra*. It did so and continued to harass the Plaintiff despite not even being able to provide services in Texas, and now unironically cries foul when the Plaintiff sued it in Texas. Though the allegation that the Plaintiff received the subject calls in Texas is a simple one, it is not conclusory because it is a plain factual statement showing that Plaintiff is entitled to relief under the wealth that case law. And, as the *Thomas* court held, the argument that Dragonfly had no clue it was contacting someone in Texas, is unavailing for the specific purposes of a *TCPA* personal jurisdiction analysis for the well-described reasons articulated in that case. *Thomas*, 559 F. Supp. 3d at 567-569. As Plaintiff explains, "Defendant's position is quite ironic, as Defendant uses its own service area to justify transfer of this matter to California, while at the same time ignoring the fact that it continues to harass out-of-state individuals for their services that they cannot even provide, and further that Defendant refuses to stop when asked."

And even Dragonfly's TCPA specific authority misses the mark. Most of the authorities it cites, including *Michaels*, *Sojka*, and *Frank*, aren't even Texas cases and thus pay no heed to *Thomas*, which is far more persuasive. And the *dicta* in *Pollock* also runs contrary to *Thomas'* explanation of how utterly unimportant area codes are. And in *Spurling*, the Court did not even address the *Thomas* decision, and instead relied on out of state cases, including a Mississippi case, for the proposition that a caller must know that the call recipient was located in the state. That reasoning runs contrary to *Thomas* and the long line of Fifth Circuit specific precedent regarding intentional telephonic torts, including *Trois* and *Wein Air Alaska*.

While jurisdiction is certainly not so expansive as to give rise to jurisdiction to individuals on out-of-state trips, they are certainly expansive enough to encompass full-time Texas residents with out-of-state area codes. *Thomas*, 559 F. Supp. 3d at 568. ("For instance, a

- 10 -

business calling the (713) area code with the expectation of reaching someone in Houston won't necessarily be subject to personal jurisdiction in Oklahoma City if the person receiving the call happened to travel there with his or her cell phone that day. But minimum contacts sufficient to establish personal jurisdiction exist here. Where a business is alleged to engage in intentional practices assuredly designed to manifest results across the country in contravention of a federal statute, the act of reaching out in that prohibited manner is purposeful availment of "the privilege of causing a consequence" in whatever state that call reaches."). Dragonfly's reading of this portion of *Thomas* actually supports *Plaintiff* because there, as here, *the plaintiff had an out-of-state area code but resided in Texas*. So too in *Cunningham*. It's evident that this portion of *Thomas* was meant to address an entirely different situation, where a plaintiff travels out of state and uses that out-of-state contact to allege jurisdiction.

But even if the court were to find a lack of jurisdiction, the proper remedy is transfer, not dismissal. "Where a court finds it lacks personal jurisdiction, it may dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(2). In the alternative, a federal court is authorized under 28 U.S.C. § 1406(a) to transfer the action to any district or division in which it could have been brought if the court finds that it is in the interest of justice to transfer the action." *Herman v. Cataphora, Inc.*, 730 F.3d 460, 466 (5th Cir. 2013). "The decision to transfer is discretionary, and often made to prevent waste of time, energy, and money, and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Springboards to Ed., Inc. v. Hamilton Cnty. Read 20*, No. 3:16-CV-2509, 2017 WL 3023489, at *5–6 (N.D. Tex. July 14, 2017) (internal quotations omitted). Although the Plaintiff also opposes transfer for the reasons stated in his opposition to Defendant's transfer motion, Plaintiff submits that, in the event that the Court finds there is no jurisdiction, then the interests of justice would favor transfer rather

than dismissal, in order to "minimize the expenditure of any additional time, energy, and money in resolving this case." *Nye Renewables, LLC v. Oak Creek Energy Sys., Inc.*, No. 2:23-CV-00009, 2023 WL 3903190, at *12 (S.D. Tex. May 25, 2023).

B.  <u>The service of process motion is moot.</u>

Second, Defendant's motion to dismiss based on insufficient service of process is moot. Instantly, the Plaintiff re-served the summons and complaint on January 29, 2026 via the office manager, Diane Halle, and then mailed a copy of the same to Dragonfly's office on February 2, 2026. This was unquestionably proper service of process. Federal Rule of Civil Procedure 4(h)(1)(A) states that a corporation like Dragonfly may be served "in the manner prescribed by Rule 4(e)(1) for serving an individual." Rule 4(e)(1), in turn, allows service by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."

The relevant provisions of California Law, California Code of Civil Procedure § 415.20(a) provides that "a summons may be served by leaving a copy of the summons and complaint during usual office hours in his or her office or, if no physical address is known, at his or her usual mailing address, other than a United States Postal Service post office box, with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left." Here, the process server's affidavit does reflect that the Summons and Complaint were left with Diane Halle, who was Dragonfly's "office manager," and thus was the "person who is apparently in charge" of Dragonfly's office. Thereafter, Andrew Perrong, counsel for Plaintiff, mailed a copy of the same to Dragonfly's office, on February 2, 2026. Service will thus be complete ten days after the date of mailing. *Id.*

Accordingly, because service has been properly (re)effectuated, Defendant's motion to dismiss based on insufficient service of process is moot.

## CONCLUSION

The Motion should be denied in its entirety.

RESPECTFULLY SUBMITTED AND DATED February 4, 2026

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2026, a copy of the foregoing was served electronically on counsel for the Defendants via the ECF system, which will send a copy to all counsel of record.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*Attorney for Plaintiff*