UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| MICHAEL CHAVEZ, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>ALL AXIS HOLDINGS, INC. d/b/a DRAGONFLY HEATING AND COOLING,<br><br>　　　　　Defendant. | Civil Action No.: 1:25-CV-2001 |

**DEFENDANT ALL AXIS HOLDINGS, INC. D/B/A DRAGONFLY HEATING AND COOLING'S REPLY IN SUPPORT OF <u>OPPOSED</u> MOTION TO DISMISS UNDER F.R.C.P. 12(b)(2) & (b)(5)**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................................5

II. THE UNDISPUTED FACTS CONFIRM THAT DISMISSAL IS NECESSARY ............6

    A. Plaintiff Has Failed To Meet His Burden of Showing That Personal Jurisdiction Should Be Exercised Here..................................................................6

        1. Plaintiff's Misguided Reliance on *Thomas* Fails To Establish The Requisite Minimum Contacts ......................................................................6

        2. Plaintiff's Arguments Fail To Show That Exercising Jurisdiction Conforms To Traditional Notions of Fair Play and Substantial Justice...............................................................................................11

    B. The New Affidavit of Service Should Be Disregarded Because The Affiant Previously Submitted a False Affidavit.......................................................13

III. CONCLUSION....................................................................................................14

**DEFENDANT ALL AXIS HOLDINGS, INC. D/B/A DRAGONFLY HEATING AND COOLING'S REPLY IN SUPPORT OF OPPOSED MOTION TO DISMISS UNDER F.R.C.P. 12(b)(2) & (b)(5)**

Page | 2

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Barton v. Real Innovation Inc.*,
  792 F. Supp. 3d 1195 (W.D. Wash. 2025)...................................................................................7

*Cantu v Platinum Marketing Grp. LLC*,
  No. 1:14-CV-71, 2015 U.S. Dist. LEXIS 90824 (S.D. Tex. Jul. 13, 2015).............................7

*Carona v. Falcon Servs. Co.*,
  72 F. Supp. 2d 731 (S.D. Tex. 1999) ..............................................................................13, 14

*Cent. Freight Lines Inc. v. APA Transp. Corp.*,
  322 F.3d 376 (5th Cir. 2003) ........................................................................................................7

*Cunningham v. Watts Guerra, LLP*,
  No. SA-22-CV-363-OLG (HJB), 2024 U.S. Dist. LEXIS 93370
  (W.D. Tex. May 23, 2024).....................................................................................................6, 7

*Deeba Abedi v. New Age Med. Clinic PA*,
  No. 1:17-CV-1618 AWI SKO, 2018 U.S. Dist. LEXIS 105932
  (E.D. Cal. June 22, 2018)..........................................................................................................8

*Eisenband v. Starion Energy, Inc.*,
  No. 17-80195-CIV-MARRA, 2018 U.S. Dist. LEXIS 79572
  (S.D. Fla. May 11, 2018) ...........................................................................................................8

*Frank v Gold's Gym*,
  No. 18-44 7(DSD/KMM), 2018 U.S. Dist. LEXIS 108231
  (D. Minn. Jun. 28, 2018)...........................................................................................................8

*Guidry v. United States Tobacco Co.*,
  188 F.3d 619 (5th Cir. 1999) ........................................................................................................7

*McCormick v. Molina Healthcare of Tex., Inc.*,
  No. A-22-CV-00018-LY, 2022 U.S. Dist. LEXIS 146880
  (W.D. Tex. May 16, 2022)..........................................................................................................7

*Michaels v. Micamp Merch. Servs.*,
  Civil Action No. 13-191E, 2013 U.S. Dist. LEXIS 159782 (W.D. Pa. Nov. 8,
  2013) ...........................................................................................................................................8

*Paniagua v. Max 18, Inc.*,
  No. 11 C 03320, 2013 U.S. Dist. LEXIS 157473 (N.D. Ill. Nov. 4, 2013)............................14

*Pfeifer v. N.J. Re-Insurance Co.*,
    304 F.R.D. 478 (D.N.J. 2015) ................................................................................... 13

*Pollock v. Protect My Car Admin. Servs.*,
    No. H-23-1252, 2023 U.S. Dist. LEXIS 173716 (S.D. Tex. Sep. 28, 2023) ..................... 7, 11

*Salaiz v. Oscar Mgmt. Corp.*,
    No. EP-22-CV-00114-DCG, 2025 U.S. Dist. LEXIS 120609
    (W.D. Tex. June 25, 2025) ......................................................................................... 6

*Sojka v Loyalty Media LLC*,
    No. 14-cv-770, 2015 U.S. Dist. LEXIS 66045 (N.D. Ill. May 20, 2015) ........................ 8

*Thomas v. Life Protect 24/7 Inc.*,
    559 F. Supp. 3d 554 (S.D. Tex. 2021) ............................................................... *passim*

**Statutes**

Fed. Rule Civ. Proc. 11 ............................................................................................... 14

Fed. Rule Civ. Proc. 12(b) ......................................................................................... 1, 9

I.  **INTRODUCTION**

Plaintiff does not—and cannot—dispute a single fact supporting Dragonfly's Motion. Instead, Plaintiff argues that under the TCPA, **any** Texas court may exercise personal jurisdiction over **any** defendant in **any** state if **any** unwanted call or text is received by a Texas resident. However, such an expansive application of personal jurisdiction is both contrary to the overwhelming weight of district court decisions (including many from Texas) and is unsupported by the sole authority on which Plaintiff relies for that proposition. Rather, the law places significance on: (1) the nature and extent of the defendant's conduct (e.g., whether defendant was randomly robocalling numbers); and (2) the information about plaintiff's whereabouts available to defendant at the time of the contact (e.g., where the plaintiff's area code was assigned to a location within the forum state). In this case, Dragonfly was not randomly robocalling anyone; it was only texting the point of contact for one of its California customers who once lived in California and who maintained a California area code after, unbeknownst to Dragonfly, relocating to Texas. Under the vast weight of district court decisions, this is insufficient to establish minimum contacts and Plaintiff's conclusory arguments relating to reasonableness of exercising jurisdiction in this case are unavailing.

Plaintiff also fails to dispute that Dragonfly was not originally served with the Complaint, nor does he even attempt to explain the perjurious Affidavit of Service he filed on December 23, 2025. (*See* Affidavit of Service, Dkt. No. 5.) Instead, Plaintiff filed another Affidavit of Service **from the same affiant who filed the original, perjurious affidavit** and simply pretends like the false affidavit never happened. Plaintiff should not be permitted to escape dismissal by simply filing a new Affidavit of Service from the same person who perjured himself in a prior Affidavit of Service, especially in the absence of any explanation or contrition. The Court should

disregard the new Affidavit of Service based on the affiant's previous perjurious affidavit and grant dismissal accordingly.

For all of these reasons, Dragonfly respectfully requests that the Court grant its Motion to Dismiss for lack of personal jurisdiction and insufficient service of process.

## II.    THE UNDISPUTED FACTS CONFIRM THAT DISMISSAL IS NECESSARY

### A.    Plaintiff Has Failed To Meet His Burden of Showing That Personal Jurisdiction Should Be Exercised Here

#### 1.    Plaintiff's Misguided Reliance on *Thomas* Fails To Establish The Requisite Minimum Contacts

Plaintiff concedes that there is no basis for the Court to exercise general personal jurisdiction here.  (*See* Plf. Opp. To Mtn. to Dismiss, Dkt. No. 19, at p. 3.)  Nevertheless, Plaintiff argues that this Court should exercise specific personal jurisdiction over Dragonfly simply because he resided in Texas when he received the four text messages that are the subject of his Complaint.  In support of this proposition, Plaintiff relies on a single case, *Thomas v. Life Protect 24/7 Inc.*, 559 F. Supp. 3d 554, 559 (S.D. Tex. 2021), in which the district court exercised specific personal jurisdiction over a telemarketing defendant who made random robocalls to a Texas plaintiff whose phone number did not include a Texas area code.[1]

---

[1] Although Plaintiff purports to support his argument by citing to four other cases in addition to *Thomas*, none of them are analogous.  For example, Plaintiff cites *Salaiz v. Oscar Mgmt. Corp.*, No. EP-22-CV-00114-DCG, 2025 U.S. Dist. LEXIS 120609, at *13 (W.D. Tex. June 25, 2025), but that case involved a Texas plaintiff whose phone number had a **Texas** area code.  *Id.* at *1–2. The *Salaiz* court's holding turned on that fact.  *Id.* at *13 ("Dialing a Texas area code and reaching that Texas resident in Texas suffices for the minimum contact inquiry.") Similarly, Plaintiff cites *Cunningham v. Watts Guerra, LLP*, No. SA-22-CV-363-OLG (HJB), 2024 U.S. Dist. LEXIS 93370, at *23-24 (W.D. Tex. May 23, 2024), but *Cunningham* involved a defendant who, in addition to making robocalls to the plaintiff, exported legal services to Texas, received administrative support from Texas, advertised services on the Texas State Bar website,

First, the reasoning employed in *Thomas* represents a stark deviation from how other Texas district courts have analyzed personal jurisdiction in TCPA cases.  *See, e.g., Pollock v. Protect My Car Admin. Servs.,* No. H-23-1252, 2023 U.S. Dist. LEXIS 173716, at *5–6 (S.D. Tex. Sep. 28, 2023) ("[I]t is evident that calls to a non-Texas area code would not show purposeful availment and would not be enough for specific jurisdiction in Texas."); *McCormick v. Molina Healthcare of Tex., Inc.*, No. A-22-CV-00018-LY, 2022 U.S. Dist. LEXIS 146880, at *7 (W.D. Tex. May 16, 2022) ("[C]ourts in this district have been 'reluctant' to find jurisdiction based only on area codes associated with phone calls because such reliance 'can no longer reliably prove purposeful availment, given the fact that technology now permits an individual anywhere in the world to be reached by a single telephone number.'"); *Cantu v Platinum Marketing Grp. LLC,* No. 1:14-CV-71, 2015 U.S. Dist. LEXIS 90824, at *8-12 (S.D. Tex. Jul. 13, 2015) ("[S]howing that a TCPA defendant called a phone number in an area code associated with the plaintiff's alleged state of residence does not, by itself, establish minimum contacts with that state.").

These cases align with the personal jurisdiction analyses in TCPA cases conducted by **numerous** other district courts throughout the country.  *See, e.g., Barton v. Real Innovation Inc.*, 792 F. Supp. 3d 1195, 1205 (W.D. Wash. 2025) ("In cases where the plaintiff's phone number was not registered in the forum, courts have asked whether there is any other information in the

---

and represented to the public that it was located in Texas.  *Id.* at 23.  The Court relied on all of these contacts with Texas to exercise personal jurisdiction.  *Id.* at 25.

Plaintiff also cites two Fifth Circuit cases, including *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 382 (5th Cir. 2003) and *Guidry v. United States Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999), but neither of those cases involve the TCPA or any facts that are remotely analogous to the circumstances here.

Thus, Plaintiff's other authorities are inapposite.

complaint sufficient to show that defendants availed themselves of the forum"); *Deeba Abedi v. New Age Med. Clinic PA*, No. 1:17-CV-1618 AWI SKO, 2018 U.S. Dist. LEXIS 105932, at *12 (E.D. Cal. June 22, 2018) ("Given the nature of the services provided by New Age, the location where New Age conducts all its business, and a cell phone number provided by Abedi that is not a California telephone number, there is no basis for a finding that New Age directly targeted California through the text messages."); *Eisenband v. Starion Energy, Inc*., No. 17-80195-CIV-MARRA, 2018 U.S. Dist. LEXIS 79572, at *17 (S.D. Fla. May 11, 2018) ("The evidence shows that Defendant made a call directed to a cellular telephone number bearing a New Jersey area code, not one bearing a Florida area code, and there is no indication in the record that Plaintiff informed Defendant that he was located in Florida…the Court concludes that Defendant's conduct does not meet the second requirement of the 'effects test.'"); *Sojka v Loyalty Media LLC*, No. 14-cv-770, 2015 U.S. Dist. LEXIS 66045, *10 (N.D. Ill. May 20, 2015) ("The Court recognizes that a cell phone prefix, unlike a landline, is not dispositive of the residence, domicile or location of the cell phone owner. For the reasons above, the Court finds that given defendants' conduct and business models, they could not reasonably anticipate being subject to an Illinois court's jurisdiction."); *Frank v Gold's Gym,* No. 18-44 7(DSD/KMM), 2018 U.S. Dist. LEXIS 108231, *6 (D. Minn. Jun. 28, 2018) ("[A]lthough Gold's Gym, Aiken sent the text messages to phone numbers with Minnesota area codes, this is, by itself, insufficient to show that it 'uniquely or expressly aimed' its actions at Minnesota…because an area code is not a reliable indicator of residence."); *Michaels v. Micamp Merch. Servs.*, Civil Action No. 13-191E, 2013 U.S. Dist. LEXIS 159782, at *12 (W.D. Pa. Nov. 8, 2013) ("Defendants utilized an 'automatic telephone dialing system' ('ATDS') to call Plaintiff, Plaintiff's cellular telephone number bears a Florida area code, not one registered to Pennsylvania, and at no time did Plaintiff inform Defendants that

DEFENDANT ALL AXIS HOLDINGS, INC. D/B/A DRAGONFLY HEATING AND COOLING'S REPLY IN SUPPORT OF OPPOSED MOTION TO DISMISS UNDER F.R.C.P. 12(b)(2) & (b)(5)

Page | 8

he was located in Pennsylvania. Accordingly, we lack specific personal jurisdiction to adjudicate Plaintiff's federal law claim and Defendant's Fed.R.Civ.P. 12(b)(2) motion to dismiss the TCPA claim must be granted.")

In short, *Thomas* stands alone for the proposition that mere residence in Texas upon receiving an allegedly unlawful contact under the TCPA is enough to exercise specific personal jurisdiction. This Court should therefore decline to adopt the reasoning in *Thomas*.

Second, even if the Court were to adopt the reasoning in *Thomas*, that case fails to support the exercise of specific personal jurisdiction in this case. Buried within the two-page block quote from *Thomas* that Plaintiff cites in his Opposition lies a significant qualifier that Plaintiff conveniently ignores:

> [C]ertain types of intentional conduct must, *by their very nature*, manifest their effects beyond the borders of the state in which the defendant acts. Here, Life Protect (allegedly) engaged in the very business practice specifically condemned by Congress—*calling numbers robotically at random*. And by doing so, Life Protect *knew full well that it was using cellular and wire lines intended to go far beyond its home state*.
>
> …
>
> Where a business is alleged to engage in intentional practices *assuredly designed to manifest results across the country in contravention of a federal statute*, the act of reaching out in that prohibited manner is purposeful availment of "the privilege of causing a consequence" in whatever state that call reaches.

*Thomas*, 559 F. Supp. 3d at 568 (emphasis added). In other words, by randomly robocalling phone numbers across the country, *regardless of area code*, exercising personal jurisdiction was justified because the very nature of Life Protect's conduct was assuredly designed to manifest results across the country and was precisely the behavior that the TCPA was designed to stop.

Significantly, however, the *Thomas* court went on to describe a hypothetical scenario in which a different outcome would result:

> This isn't to say that a person carrying around a cell phone necessarily carries with it personal jurisdiction over any business that might call that line wherever the phone might be located at the time. For instance, a business calling the (713) area code with the expectation of reaching someone in Houston won't necessarily be subject to personal jurisdiction in Oklahoma City if the person receiving the call happened to travel there with his or her cell phone that day.

*Thomas*, 559 F. Supp. 3d at 568. Notably, these hypothetical facts mirror the facts in this case.

Here it is **undisputed** that: (1) Dragonfly is a California company with its principal place of business in California; (2) Dragonfly's business is limited to California; (3) Dragonfly only operates in California; (4) Dragonfly only has customers in California; (5) Dragonfly only communicates via text messages with its customers; (6) Dragonfly only sends text messages to customers with their consent; (7) Plaintiff was a tenant on a Dragonfly customer's property in California in 2017; (8) Plaintiff's landlord for the California property was related to Plaintiff; (9) Plaintiff's landlord and relative provided Plaintiff's number to Dragonfly so that Plaintiff could serve as Dragonfly's point of contact for service on the property in California; (10) Plaintiff's phone number had a California area code (949); (11) Plaintiff did, in fact, serve as Dragonfly's point of contact for the California property; (12) Plaintiff did not object to serving as the property's point of contact; (13) nobody, including Plaintiff, ever informed Dragonfly that Plaintiff had relocated to Texas; (14) Dragonfly did not know and had no reason to know that Plaintiff relocated to Texas; (15) Plaintiff did not voice objection to receiving text messages relating to Dragonfly until 2025; (16) once Plaintiff contacted Dragonfly to object to the text messages, Dragonfly immediately removed his number from its database and that of RP1.ai.

Not only do these uncontroverted facts establish that Dragonfly was not "calling numbers robotically at random" or "engaged in the very business practice specifically condemned by Congress," *Thomas*, 559 F. Supp. 3d at 568, they instead confirm that Dragonfly only acted in a way that was calculated to **abide** by the TCPA and limit its reach to its consenting customers within California.  As a result, Dragonfly could not have known or even anticipated that its actions would go beyond its home state, especially since Plaintiff's phone number had a California area code.  *See Pollock*, 2023 U.S. Dist. LEXIS 173716, at *6 ("[T]here is no evidence that PMCAS targeted Texas phone numbers, that PMCAS had any basis for believing that the telephone associated with that number would be located in Texas, and that PMCAS had no reason to 'reasonably anticipate being haled into court' in Texas.").  For these reasons, dismissal would be required even under *Thomas*.

### 2. Plaintiff's Arguments Fail To Show That Exercising Jurisdiction Conforms To Traditional Notions of Fair Play and Substantial Justice

Beyond Plaintiff's misguided reliance on *Thomas*, Plaintiff only provides a cursory analysis about the reasonableness of exercising personal jurisdiction here.  For example, Plaintiff states, with no further argument or citation to facts or law, that "the burden of having Dragonfly defend itself in Texas…is minimal" and "[t]he transnational aspect of federal class action litigation is just as burdensome in Texas as it will be in California." (Plf. Opp. To Mtn. to Dismiss, Dkt. No. 19, at p.8.)  Plaintiff also adds, with no explanation or evidence, that "it would be incredibly burdensome for Plaintiff to have to prosecute this case in California."  (*Id.* at p.9.)  However, Plaintiff does not address the fact that Dragonfly is a small, California-based company with only 13 employees that would be exceptionally burdened by having to pay its California attorneys to appear in Texas, let alone send representatives to appear for a trial in Texas and

DEFENDANT ALL AXIS HOLDINGS, INC. D/B/A DRAGONFLY HEATING AND COOLING'S REPLY IN SUPPORT OF OPPOSED MOTION TO DISMISS UNDER F.R.C.P. 12(b)(2) & (b)(5)

Page | 11

subpoena putative class members and RP1.ai witnesses to appear for trial in Texas. By contrast, Plaintiff opted to hire a Pennsylvania-based law firm that specializes in TCPA class actions, so he would bear the same burden by sending his attorneys to California instead of Texas. Plaintiff's only burden of prosecuting the case in California would be traveling there for trial.

Plaintiff also makes the unadorned assertion that "Texas has a substantial interest in securing convenient and effective relief for its residents…." (Plf. Opp. To Mtn. to Dismiss, Dkt. No. 19, at p.9)  However, Plaintiff fails to address the fact that Plaintiff brings federal TCPA claims (not state claims) as a nationwide class action where every other putative class member is a California resident (not Texas residents) and all common questions of law and fact will rise and fall based on conduct that occurred in California (not in Texas).  If there is any state with a substantial interest in this action, it would be California.

Plaintiff next makes the bald assertion that "it would be most efficient to resolve this controversy in Texas."  (Plf. Opp. To Mtn. to Dismiss, Dkt. No. 19, at p.9.)  However, Plaintiff is conflating considerations for a Motion to Transfer with due process. The constitution requires due process—which can often be inefficient. But the issue in front of the court in *this* motion is whether the court's exercise of personal jurisdiction invades Dragonfly's due process rights, not whether Texas is the most "efficient" litigation locale.[2]

Finally, Plaintiff confusingly cites to *Thomas* to assert that Texas has an interest in "ensuring relief for intentional torts committed against residents within their borders." (Plf. Opp. To Mtn. to Dismiss, Dkt. No. 19, at p.9.)  But Plaintiff makes no mention about the fact that

---

[2] In any event, California is the most efficient locale to litigate this matter as set forth in Defendant's Motion to Transfer (i.e., all other putative class members are in California (specifically in the Central District of California), Dragonfly and its employees are in California, and evidence held by Dragonfly and RP1.ai are located in California.

every other class member resides in California. For these reasons, exercising jurisdiction in Texas would offend traditional notions of fair play and substantial justice.

      **B.**      <u>**The New Affidavit of Service Should Be Disregarded Because The Affiant Previously Submitted a False Affidavit**</u>

Plaintiff also does not dispute that service was not originally made on Dragonfly, nor does he even attempt to explain or apologize for the perjurious affidavit of service he filed on December 23, 2025. (*See* Affidavit of Service, Dkt. No. 5.) Instead, Plaintiff simply filed another Affidavit of Service *from the same person who filed the original, perjurious affidavit* and argues that Dragonfly's Motion is now moot because service has now supposedly been "perfected." (*Compare* Affidavit of Service, Dkt. No. 5 *with* Affidavit of Service, Dkt. No.18.)

"This Court has the inherent power, as well as the authority expressly granted to it under the Federal Rules of Civil Procedure, to impose sanctions where warranted." *Carona v. Falcon Servs. Co.*, 72 F. Supp. 2d 731, 733 (S.D. Tex. 1999) (*citing Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)). "If sanctions may be imposed when a party asserts as true that which lacks evidentiary support, a fortiori sanctions may be imposed when a party recklessly or in bad faith asserts as true that which is actually false." *Id.* at 733.

A court may disregard an Affidavit of Service where a plaintiff has previously filed a false affidavit claiming to have perfected service, **<u>even when doing so leads to dismissal of the action</u>**. *See, e.g., Pfeifer v. N.J. Re-Insurance Co.*, 304 F.R.D. 478, 480 (D.N.J. 2015) (disregarding subsequent Affidavit of Service and dismissing action under Rule 4(m) for failing to file Affidavit of Service within 120 days of filing the complaint where plaintiff had previously filed a false affidavit of completed service).

In addition, sanctions are appropriate under Rule 11 where a party has unjustifiably filed false affidavits relating to a highly relevant fact. *See, e.g., Carona*, 72 F. Supp. 2d at 733 ("Thus the Court is confronted with a situation in which a party has repeatedly sought to transfer venue elsewhere, yet has filed sworn affidavits that are flatly contradictory on their face with respect to a highly relevant fact") *accord Paniagua v. Max 18, Inc.*, No. 11 C 03320, 2013 U.S. Dist. LEXIS 157473, at *24 (N.D. Ill. Nov. 4, 2013) (finding bad faith in party's filing of a false affidavit in support of motion for summary judgment and issuing an order to show cause why sanctions should not issue, including striking the offending affidavit, denying the motion, ordering reasonable fees and costs to the opposing party, and monetary sanctions under Rule 11).

Here, Plaintiff was informed of the falsity of the December 23, 2025, Affidavit of Service during meet and confer efforts that took place on December 30 and December 31, 2025. (*See* Def. Mtn. to Dismiss, Dkt. No. 11, at p.2) ("Pursuant to Local Rule CV-7(g), this Motion is made following extensive meet and confer efforts between counsel for the parties, which first took place by written correspondence on December 30, 2025, all of which were unsuccessful in resolving the substance of this motion.") However, even after Dragonfly filed this Motion and the falsity of the December 23rd affidavit was exposed, Plaintiff failed to withdraw the previous affidavit or provide any explanation. Instead, Plaintiff had the same affiant provide another affidavit of service purporting to be in compliance. The Court should disregard the new Affidavit of Service and dismiss the action for insufficient service of process.

### III.  CONCLUSION

For all of the foregoing reasons, Dragonfly respectfully requests that the Court dismiss the action for lack of personal jurisdiction and insufficient service of process.

DATED: February 11, 2026

                                                                                         */s/ Alejandro G. Ruiz*

Jeffrey K. Brown
Alejandro G. Ruiz *(Pro Hac Vice)*
Camilla J. Dudley *(Pro Hac Vice)*
PAYNE & FEARS LLP
Attorneys at Law
4 Park Plaza, Suite 1100
Irvine, California 92614
Telephone: (949) 851-1100
Facsimile: (949) 851-1212
jkb@paynefears.com
agr@paynefears.com
cjd@paynefears.com

Attorneys for Defendant All Axis Holdings, Inc.
d/b/a Dragonfly Heating and Cooling

# CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of February, 2026, a true and correct copy of **DEFENDANT ALL AXIS HOLDINGS, INC. D/B/A DRAGONFLY HEATING AND COOLING'S REPLY IN SUPPORT OF OPPOSED MOTION TO DISMISS UNDER F.R.C.P. 12(b)(2) & (b)(5)** was served electronically via the ECF system on the following in accordance with Fed. R. Civ. P. 5(b)(2)(E):

| | |
|---|---|
| Andrew Roman Perrong, Esq.<br>Perrong Law LLC<br>2657 Mount Carmel Avenue<br>Glenside, PA 19038<br>Email: a@perronglaw.com | *Attorneys for Plaintiff Michael Chavez ana the Proposed Class* |
| Anthony Paronich, Esq.<br>Paronich Law, P.C.<br>350 Lincoln Street, Suite 2400<br>Hingham, MA 02043<br>Email: anthony@paronichlaw.com | *Attorneys for Plaintiff Michael Chavez ana the Proposed Class* |

By  */s/ Paige Fruth*
    Paige Fruth, an Employee of
    PAYNE & FEARS LLP